## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This is a Settlement Agreement and Release ("Agreement") between Fishbox Restaurant Corporation d/b/a Sammy's Fish Box Restaurant ("Fishbox" or the "Corporate Defendant"), Samuel Chernin ("Chernin") and Lauren Chernin ("Lauren") (Chernin and Lauren collectively hereinafter the "Individual Defendants"), on the one hand (together, the "Company"), and Joseph Pagan ("Pagan") and Zacarias Paris ("Paris") (Pagan and Paris collectively hereinafter "Plaintiffs"), on the other hand. The Company and Plaintiffs may each be referred to as a "Party," or together, be referred to herein as the "Parties."

WHEREAS, a dispute arose between the Parties related to Plaintiffs' employment with the Company and the terms and conditions thereof; and

WHEREAS, the Company has denied any and all allegations of wrongdoing asserted by Plaintiffs;

WHEREAS, the Parties desire to fully and finally resolve all differences between them.

NOW THEREFORE, in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties intending to be bound, do hereby agree as follows:

1. **Non-Admission.** This Agreement is entered into mutually in order to avoid the costs, uncertainty, and vexation of litigation. The terms set out in this Agreement are a compromise settlement of disputed claims, the validity, existence or occurrence of which is expressly disputed by the Parties. This Agreement shall not be admissible evidence in any judicial, administrative, or other legal proceedings for any reason except to enforce the terms of this Agreement.

2. **Consideration.** In consideration for Plaintiffs' execution, compliance with, and non-revocation of this Agreement, Fishbox Restaurant Corporation shall cause Plaintiffs to be paid the total gross amount of Sixty-Five Thousand and 00/100 Dollars ($65,000.00) (the "Settlement Payment") within ten business days of the full and complete execution of this Agreement and the court ordered dismissal of the SDNY court action, 17-CV-9458.

   a. The Settlement Payment shall be made as follows:

      (i) A check made payable to Joseph Pagan in the amount of $21,645, less all applicable taxes and withholdings, shall be sent to The Ottinger Firm, P.C., 401 Park Ave. South, 9th Floor, New York, NY 10016. Mr. Pagan will provide Milman Labuda Law Group a Tax Form W4 within 5 business days from the date of execution of this Agreement, and Fishbox Restaurant Corporation will issued Mr. Pagan a W2 at the appropriate time and in compliance with all applicable laws.
      (ii) A check made payable to Zacarias Paris in the amount of $21,645, less all applicable taxes and withholdings, shall be sent to The Ottinger Firm, P.C., 401 Park Ave. South, 9th Floor, New York, NY 10016. Mr. Paris will provide Milman Labuda Law Group a Tax Form W4 within 5 business days from the date of execution of this Agreement, and Fishbox Restaurant Corporation will issued Mr. Pagan a W2 at the appropriate time and in compliance with all applicable laws.
      (iii) A check made payable to The Ottinger Firm, P.C., in the amount of $21,710 shall be sent to The Ottinger Firm, P.C., 401 Park Ave. South, 9th Floor, New York, NY 10016. The Ottinger Firm, P.C., shall provide Milman Labuda Law Group with a copy of The Ottinger Firm's Tax Form W9 within 5 business days from the day of execution of this Agreement.

b. Plaintiffs agree and affirm that the Settlement Payment shall constitute the entire amount of monetary consideration provided to them and their legal counsel under this Agreement and that Plaintiffs will not seek any further compensation for any other claimed unpaid wages, wage supplements, injuries, damages, costs, disbursements, or attorneys' fees in connection with any of the matters encompassed in this Agreement or any aspect of Plaintiffs' relationship with the Company. Plaintiffs agree, affirm, and acknowledge that they have been paid all wages and wage supplements and all other amounts owed to him for any reason by the Company.

c. Plaintiffs further agree that they shall each be responsible for payment of all personal taxes that may be due as a result of the Settlement Payment. Plaintiffs understand and agree that no representation is made by or on behalf of the Company regarding tax obligations or consequences that may arise from this Agreement. Further, Plaintiffs agree to indemnify and hold harmless the Company from and against all liens, liabilities, interest and penalties that may be assessed against or incurred by it as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against Plaintiffs on the Settlement Payment.

3. **Claims Released by Plaintiffs.**

a. In exchange for the Settlement Payment and for other good and valuable consideration, receipt of which is hereby acknowledged, Plaintiffs and on behalf of Plaintiffs' family members, heirs, executors, representatives, trustees, agents, insurers, administrators, legal representatives, successors and assigns (collectively, the "Releasors"), irrevocably and unconditionally fully and forever waive, release and discharge the Company, the Company's parents, subsidiaries, affiliates, divisions, and/or related companies, and each of their respective directors, officers, shareholders, partners, employees, managers, members, agents, attorneys, and successors of the Company ("Releasees") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of Plaintiffs' execution of this Agreement, including, without limitation, any claims under any federal, state, local or foreign law, that Releasors may have, have ever had or may have in the future against Releasees, including but not limited to those arising out of, or in any way related to Plaintiffs' hire, benefits, employment, termination or separation from employment with the Company and any actual or alleged act, omission, transaction, practice, conduct, occurrence or other matter, whether or not Plaintiffs' have previously filed such a claim.

b. Plaintiffs further agree and acknowledge that Releasors are giving up any rights or claims which Releasors may have against Releasees under numerous laws and regulations, including but not limited to, those regulating employment, whether on the federal, state, or local level, including, but not limited to:

(i) any and all claims under Title VII of the Civil Rights Act, as amended, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, as amended, the Fair Labor Standards Act (to the extent permitted by law), the Equal Pay Act, as amended, the Employee Retirement Income Security Act, as amended (with respect to unvested benefits), the Civil Rights Act of 1991, as amended, Section 1981 of U.S.C. Title 42, the Sarbanes-Oxley Act of 2002, as amended, the Worker Adjustment and Retraining Notification Act, as amended, the National Labor Relations Act, as amended, the Age Discrimination in Employment Act, as amended, the Uniform Services Employment and Reemployment Rights Act, as amended, the Genetic Information Nondiscrimination Act of 2008, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the Occupational Safety and Health Act, the Immigration Reform and Control Act of 1986, the Older Workers' Benefit Protection Act and the Age

Discrimination in Employment Act, as amended, the New York State Human Rights Law, the New York Labor Law (including but not limited to the Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, all provisions prohibiting discrimination and retaliation, and all provisions regulating wage and hour law), the New York Civil Rights Law, Section 125 of the New York Workers' Compensation Law, the New York City Human Rights Law, any and all claims pursuant to any other state law and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released;

     (ii) any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation and/or severance;

     (iii) any and all claims arising under tort, contract and/or quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, negligent or intentional infliction of emotional distress; and

     (iv) any and all claims for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements from the beginning of time to the date of Plaintiffs' execution of this Agreement.

     (v) Plaintiffs shall not hereafter directly or indirectly commence, continue, assist or participate in any lawsuit, charge, claim or proceeding, in any forum (including but not limited to any court or agency), against the Company arising out of or relating to any allegation or claim (whether Plaintiffs or any other person's) concerning Plaintiffs' employment with the Company or any of its parents, subsidiaries or affiliates, unless directed by court order or subpoena. Plaintiffs expressly agree that if they breach this Section 3(v): (1) they will be responsible for any attorney's fees incurred by the Company as a result of said breach; and (2) they shall immediately pay back to the Company all monies paid to them under this Agreement.

    c. This release and waiver of claims shall not be construed to impair Plaintiffs' right to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement. Nor does this release prohibit or bar Plaintiffs from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Plaintiffs agree to release and waive and hereby does release and waive their right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on Plaintiffs' behalf, either individually or as part of a collective action, by any governmental agency or other third party.

  4. **Plaintiffs' Representations and Warranties**. Plaintiffs hereby represent, warrant, acknowledge, and affirm as follows:

      a.     that they have not filed or permitted anyone to file on their behalf, any complaints, charges or claims for relief against the Company with any local, state or federal court or administrative agency;

      b.     that they have been paid and has received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which he may be due for any reason, except as provided in this Agreement; and

      c.     that they have no known workplace injuries or occupational diseases and has been provided and/or has not been denied any leave requested under the Family and Medical Leave Act.

5.     **Confidentiality.**

      a.     Plaintiffs and their counsel agree to keep the existence, terms, and events leading up to this Agreement strictly confidential. Chernin and Lauren and their counsel agree to keep the existence, terms, and events leading up to this Agreement strictly confidential. Notwithstanding the foregoing, the Parties may disclose the existence and terms of this Agreement to their immediate family, attorney, and financial advisors for tax purposes or financial planning, who shall also be obligated to keep the existence and the terms of this Agreement strictly confidential. In addition, the Parties may disclose the existence and terms of this Agreement, if necessary, in any action to enforce this Agreement, or as otherwise required by law, the courts, or governmental authority, provided however that they promptly notify the other party of any attempts to compel disclosure sufficiently prior to such disclosure. Any disclosure of this Settlement by immediate family, attorney, or financial advisors shall be deemed a breach. In the event of a breach, any violator shall pay any damages to the aggrieved party. In the event of any action or litigation related to this section of this Agreement, the prevailing party shall be entitled to an award of legal fees. Section 5(a) is a material term of the Agreement.

      b.     Plaintiffs agree not to disclose any confidential or proprietary information of the Company obtained during their employment with the Company to any person or entity, for any reason, at any time. Plaintiffs further agree not to use any confidential or proprietary information of the Company for any purpose, whether on their own behalf or on behalf of another.

6.     **Mutual Non-Disparagement.** Plaintiffs and Chernin and Lauren agree that they each shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to any of the Parties. For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of the Company in the eyes of an ordinary and reasonable person in the community, but will not preclude the Parties from making good faith statements in the context of any judicial, administrative, arbitration, mediation or other legal proceeding.

7.     **Response to Inquiries on Employment.** If a prospective employer of Plaintiffs contacts the Company seeking an employment reference, the Company will only provide Plaintiffs' dates of employment and their position held with the Company.

8. **Severability.** The provisions of this Agreement are severable. If any provision of this Agreement is held invalid, the invalidity shall not affect other provisions or application of the Agreement that can be given effect without the invalid provision or application.

9. **Non-Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns. The Company may assign this Agreement without notice in its sole discretion.

10. **Headings.** The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

11. **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

12. **Representation by Counsel and Entire Agreement**. This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior discussions, agreements or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties, and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein.

13. **Applicable Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

14. **Voluntary Agreement.** By signing in the space provided below, Plaintiffs agree and affirm that:

   a. They were advised to and have carefully read and fully understand all of the provisions of this Agreement;

   b. This Agreement is legally binding, and by signing it, Plaintiffs understand that they are giving up certain rights, including their right to pursue any claims against the Releasees from the beginning of time until the date of this Agreement and agree not to file any future claims;

   c. No promise or representation of any kind or character has been made by the Company or by anyone acting on its behalf to induce Plaintiffs to enter into this Agreement, and Plaintiffs have not been forced or pressured in any way to sign this Agreement; and

   d. Through this Agreement, Plaintiffs are releasing all of the Releasees from any and all claims that he may have against the Releasees in exchange for the Settlement Payment described herein and agree not to file any future claims;

5

e. Plaintiffs knowingly and voluntarily agrees to all of the terms set forth in this Agreement, and intends to be legally bound by them.

[SIGNATURE PAGE TO FOLLOW]

**Fishbox Restaurant Corporation**

By: _[signature: Samuel Chernin]_      DATE: 03 / 08 / 18
Samuel Chernin

_[signature: Lauren Chernin]_      DATE: 03 / 08 / 18
Lauren Chernin

_____      DATE: ___ / ___ / ___
Zacaria Paris

_[signature: Joseph Pagan]_      DATE: ___ / ___ / ___
Joseph Pagan
Milman Labuda Law Group      DATE: 3 / 12 / 18

_____      DATE: ___ / ___ / ___
The Ottinger Firm

7

**Fishbox Restaurant Corporation**

By:_____          DATE: ____/____/____

_____              DATE: ____/____/____
**Samuel Chernin**

_____              DATE: ____/____/____
**Lauren Chernin**

_____              DATE: 3 / 12 / 2018
**Zacaria Paris**
                                             March 8, 2018
_____              DATE: ____/____/____
**Joseph Pagan**

_____              DATE: ____/____/____
**Milman Labuda Law Group**

_____              DATE: 03 / 12 / 2018
**The Ottinger Firm**

7